UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALEXANDER RIESKE, on behalf of himself and
all others similarly situated,

                      Plaintiff,                  **MEMORANDUM**
                                           **AND OPINION**

           -against-                         CV 21-4122 (JMA)(AYS)

GOVERNMENT EMPLOYEES INSURANCE
COMPANY INC. d/b/a GEICO,

                      Defendant.
------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

       Plaintiff, Alexander Rieske[1] ("Plaintiff" or "Rieske"), commenced this action, on behalf

of himself and others similarly situated, pursuant to the Fair Labor Standards Act of 1938, 29

USC §§ 201, et seq. ("FLSA"), and New York Labor Law Article 6 §§ 190 et seq., and Article

19 §§ 650 et seq. ("NYLL"). Plaintiff seeks unpaid wages, overtime compensation and other

damages. Named as defendant is Government Employees Insurance Company Inc., doing

business as GEICO ("Defendant" or "GEICO").

       Presently before the Court is Plaintiff's motion to have this matter proceed conditionally

as a collective action, pursuant to 29 U.S.C. § 216(b). In the event that this Court grants

Plaintiff's motion for conditional certification, Plaintiff seeks approval of a form of notice

advising members of the collective of their right to opt-in to this action and authorizing the

sending of notice of the collective action. Defendant opposes the motion in its entirety.

---

[1] Pursuant to the original Complaint commencing this action, Alexander Rieske was the original
lead Plaintiff. (Docket Entry ("DE") [1].) On August 23, 2021, pursuant to the filing of an
Amended Complaint, Jawad Khalfan was substituted in for Rieske as lead Plaintiff. (DE [8].) On
July 27, 2022, Rieske was then substituted back in as lead Plaintiff, pursuant to the filing of a
Second Amended Complaint. (DE [57].) Rieske remains lead Plaintiff as of the date of this
Memorandum and Opinion.

For the reasons set forth below, Plaintiff's motion to proceed as a conditional collective action is granted. The collective action shall consist of all current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters ("Adjusters") (including comparable roles with different titles) throughout the State of New York at any time from November 28, 2018 to the present. Notice shall be disseminated to all Adjusters employed by Defendant throughout New York at any time from November 28, 2018 to the present. The form of notice shall consist of mailing, email, and text-message, with reminder notices sent thirty days prior the end of the opt-in period. The opt-in period for potential plaintiffs shall be sixty days. As such, Defendant is directed to provide Plaintiff with, to the extent known, the names, mailing addresses, telephone numbers, dates of employment, locations of employment, and work and personal email addresses of all employees who may be potential plaintiffs herein within ten (10) days of the date of this Order.

## BACKGROUND

I.      Facts Considered in the Context of this Motion

The facts summarized below are drawn from the submissions of the parties as described below. Plaintiff relies on the allegations set forth in the Second Amended Complaint, (DE [57]), as well as documents and declarations. As to factual declarations, Plaintiff submits his own declaration, several employee declarations, and declarations of employees who have asserted similar claims in other lawsuits. In response, Defendant submits the factual declarations of Kevin Costigan ("Costigan"), Auto Damage ("AD") Claims Director for GEICO in New York, (DE [49]), GEICO's Temporary Work from Home Agreement, (DE [49-1]) an excerpt from GEICO's Associate Handbook: Nonexempt Associate Guidelines, (DE [49-2]), an email from Costigan to NY AD Adjusters and Management, (DE [49-3]), several employee declarations, (DE [50]), and

declarations and excerpts of employee depositions in other actions against Defendant for collective action certification.

II.     <u>The Parties and the Factual Allegations of the Complaint</u>

Defendant, GEICO, is a national insurance company incorporated in Maryland with its principal place of business in Maryland. (2d Am. Compl. ¶ 13.) GEICO is a wholly owned subsidiary of Berkshire Hathaway, Inc. and its headquarters are located at 5260 Western Avenue, Chevy Chase Village, Maryland, 20815. (<u>Id.</u>) GEICO is in the business of providing vehicle, property, and business insurance and operates in all fifty states, including New York. (<u>Id.</u> ¶ 21.)

Plaintiff was employed as a full-time, non-exempt, hourly-paid Adjuster based out of GEICO's Woodbury, New York office from about October 2013 to the present, and was regularly scheduled to work Monday through Friday for about eight and one-half hours per day. (<u>Id.</u> ¶¶ 7-8.) Rieske alleges that pursuant to Defendant's policy, pattern, or practice, he was not paid for approximately five to ten hours of overtime worked each week as an Adjuster while performing "off-the-clock" work in order to meet Defendant's mandatory quota in the allotted paid hours. (<u>Id.</u> ¶ 9.) For example, Rieske alleges that during the workweek of September 29, 2019, he worked approximately forty-five hours and was not paid for approximately seven and one-half hours worked off-the-clock. (<u>Id.</u> ¶ 10.)

Plaintiff and the putative collective members are all current or former Adjusters in New York. (<u>Id.</u> ¶ 22.) The duties of Adjusters include processing insurance claims, calling customers, inspecting vehicles for collision and comprehensive damages, maintaining and managing accurate funds for the issuance of claim payments, submitting reports online in real time, and driving to customer homes or working in auto body shops to assess vehicle damage. (<u>Id.</u>)

Plaintiff alleges that GEICO Adjusters are expected to meet GEICO's required quota of processing or working on at least ten claims or inspections per day and as many as thirty customer calls per day, thus requiring them to work additional hours beyond their scheduled time on-the-clock. (Id. ¶¶ 23-24.) As such, Plaintiff alleges that the policies and practices of Defendant have at all relevant times been similar for Rieske and the putative collective members, regardless of their assigned work location in New York. (Id.)

Despite being scheduled to work approximately eight and one-half hours per day with a one-hour break, five days a week, for a total of approximately thirty-seven and one-half hours per week, Rieske alleges that he and putative collective members typically work eight and one-half to ten hours per day to fulfill the required workload and do not receive pay for all time worked in excess of forty hours. (Id. ¶ 24.) Plaintiff alleges that, in some instances, he and putative collective members begin their workday one hour prior to the start of their paid scheduled shifts, work during unpaid meal breaks, and continue working after their shift ends to complete their required tasks. (Id. ¶¶ 24, 26-27.) Plaintiff further alleges that he and putative collective members are required to work off-the-clock to attend meetings outside of their scheduled shifts and without pay. (Id. ¶ 28.) Plaintiff alleges that GEICO disincentivizes employees from reporting this off-the-clock or unrecorded time because reporting such time would negatively impact employees' productivity metrics and evaluations. (Id. ¶ 25.) Further, Plaintiff alleges that Defendant routinely denies timely and off-duty meal periods, asserting that: (1) Defendant does not authorize, permit, and/or make available timely meal breaks for Rieske and putative collective members; and (2) Defendant knows or has reason to know that Rieske and putative collective members are too busy with work during the day to have time to take bona fide meal breaks. (Id. ¶ 32.)

4

Plaintiff alleges that Defendant's time records, which are maintained for all Adjusters throughout the United States, fail to accurately reflect all hours worked, based on Defendant's policies and procedures requiring Plaintiff and putative collective members to work off-the-clock, during meal breaks, and without compensation. (Id. ¶ 36.) According to Plaintiff, Defendant and its managers routinely manipulate (or do not correct) the timecards of these employees to make it appear that they took a timely and compliant meal break in order to avoid paying additional wages and penalties. (Id. ¶ 34.)

III.   Claims Alleged in the Amended Complaint and the Proposed Collective

Plaintiff's first cause of action alleges that Defendant violated the FLSA by willfully failing to pay him and putative collective members overtime for all hours worked in excess of forty hours per workweek, and willfully failed to record all of the time that its employees, including Rieske and putative collective members, have worked for Defendant. (Id. ¶¶ 44, 63, 69-71.) The second cause of action alleges a parallel unpaid wage claim pursuant to the New York Labor Law ("NYLL"). (Id. ¶ 78.)  The third cause of action alleges overtime wage violations pursuant to the New York Labor Law. (Id. ¶¶ 86-88.)  Finally, the fourth cause of action alleges Defendant's failure to keep records, pursuant to the NYLL. (Id. ¶¶ 91-96.)

Plaintiff seeks to pursue this matter as an FLSA collective action that includes all non-exempt Auto Claim and/or Damage Adjusters employed by Defendant throughout New York at any time from November 28, 2018 to the present. (Pl. Mot. for Conditional Certification and Notice, DE [44], 1.) Members of the proposed collective action are alleged to be subject to the same unlawful policy as Rieske in that they, like he, worked hours for which they were not compensated in violation of the FLSA's minimum wage provisions. Defendant's conduct with respect to the improper payment of wages and failure to keep, make, preserve, maintain, and

furnish accurate records of time worked by Rieske and putative collective members, is alleged to be willful. (2d Am. Compl. ¶¶ 44, 71-73, 79, 88.) In furtherance of the request to proceed as a collective action, Plaintiff requests court-authorized notice be disseminated to the putative collective members to notify them of the pendency of this action, and of their rights under the FLSA. (Id., Wherefore Clause ¶ A.)

IV.     Plaintiff's Motion and Supporting Documentation

        As noted, Plaintiff seeks conditional certification of this matter as an FLSA collective action, and to have notice of the pendency of this action (and the right to opt in), disseminated to all potential members of the proposed collective action. The individuals to whom notice is proposed to be sent are described as "all Adjusters who worked for GEICO throughout New York at any time from November 28, 2018 to the present." (Pl. Mem. Of Law in Supp. Of Pl. Mot. For Conditional Certification ("Pl. Mem."), DE [45], 19.) Plaintiff seeks a three-year time period for their FLSA collective action plus the 162 days during which their claims were tolled per the Court's November 18, 2021 Order (Id. at n.1, referencing DE [24] at ¶ 7). In support of the motion, Plaintiff submits, as noted above, Rieske's declaration, along with other employee declarations and documents.

        Rieske's declaration states that he was employed by Defendant as an Auto Claim and/or Damage Adjuster at GEICO from approximately October 2013 to May 2022 (the date of the declaration). (Rieske Decl. ¶ 1.) Throughout his employment, Rieske's typical schedule was 8:00 AM to 4:30 PM, Monday to Friday, but he worked more than those hours while off-the-clock and without compensation, per Defendant's expectations. (Id. ¶ 6.) In a typical workweek, Rieske worked approximately fifty hours per week, on average, but was usually only paid for 38.75 hours, resulting in time worked off-the-clock. (Id.) Rieske states that it was Defendant's

6

practice to have Adjusters complete an assigned quota of inspections and claims in a given day, and if Adjusters did not complete their quota in the allotted 7.75 hours per day, they suffered in their productivity metrics, which could lead to compensation ramifications or disciplinary action. (Id. ¶ 7.) As such, in accordance with Defendant's practices and in order to complete the number of claims timely to meet Defendant's quota, Adjusters, including Rieske, regularly worked outside of their scheduled hours without pay, including before and after their shift and during their scheduled unpaid meal breaks (Id. ¶¶ 8-11).

Rieske states that Defendant pressured Adjusters not to record all time worked and supervisors frequently reiterated that Adjusters could not record overtime hours due to Defendant's budget, pay restrictions, and productivity metrics. (Id. ¶ 13). Rieske further states that if the Adjuster did record any more time than allotted to complete their quota of claims, it would hurt their productivity metrics and could result in discipline. (Id.) Finally, Rieske states that other Adjusters with whom he worked were subject to the same policies and also regularly worked over forty hours per week while off-the-clock. (Id. ¶ 12.)

Plaintiff's accompanying declarations from other employees support his assertion that he and other Adjusters were subject to the same compensation policies and procedures. (Berrios Decl., Khlafan Decl., Myrie Decl., Occhiogrosso Decl., Sandoval Decl., and Guzman Decl.).[2]

V.    Defendant's Opposition

Defendant opposes Plaintiff's motion in its entirety, on the grounds that there is no evidence it had a policy instructing or encouraging Adjusters to work overtime without

---

[2] None of these declarations appear to have been filed on the docket sheet in the within action; however, they were submitted to the Court in hard copy, and appear to have been served on opposing counsel. As such, the Court has properly considered them in the context of the within motion.

reporting it. (Def. Mem. of Law in Opp'n to Pl. Mot. for Conditional Certification, ("Def. Mem"), DE [48] 1.) In support of its opposition, Defendant argues first that the determination of whether any individual Adjuster worked off-the-clock would require employee-specific inquiries, inherently unsuitable for a collective action. (Id.) According to Defendant, inquiries into individual Adjusters would reveal that: (1) Adjusters worked in various work settings, including in the field, at body shops, at home (especially after COVID) and in GEICO offices; (2) Adjusters' workload fluctuated; (3) their supervisors changed often; and, (4) they had different work schedules, locations and duties. (Id.)

Second, Defendant argues that even if an Adjuster worked off-the-clock of their own volition, there is no common proof that Defendant was aware of the alleged off-the-clock work, since Adjusters (because they work remotely) normally did not work in the presence of their supervisors. Moreover, Adjusters recorded their own time in Defendant's timekeeping system, thus certifying to Defendant that it was accurate each pay period. (Id. at 2.)

Finally, Defendant argues that even if the Court is inclined to grant a collective action, Plaintiff's proposed notice procedures should be limited to three years from when the mailing list is due to Plaintiff (plus 162 days pursuant to the Court's November 8, 2021 Order) to September 1, 2020. (Def. Mem. 3.) Defendant states that employees who became employed after September 1, 2020 are not "similarly situated" to those that worked before, given that: (1) overtime was actively encouraged among Adjusters post September 1, 2020 to offset staffing reductions during COVID and unwillingness of employees to work in certain settings, and (2) financial incentives were made available to Adjusters beginning in or about July 2021, and those incentives have largely remained in place. (Id. 2-3.)

In support of its position, Defendant relies on the documents set forth above, which include the declaration of Kevin Costigan, Auto Damage Claims Director for GEICO in New York. Costigan avers in his declaration that GEICO's Adjusters estimate the cost of repairing damaged vehicles. (Costigan Decl. ¶ 4). He asserts that the time it takes to write an estimate depends on many factors, including the severity of the damage. (Id.) Costigan further states that there are various types of Adjusters (Field Adjusters, Virtual Adjusters, Catastrophe Auto Damage Adjusters, Resident Adjusters, Drive-by Adjusters, ARX Adjusters), and explains the differences between the various types, as well as the differences among Field Adjusters depending on which areas they service. (Id. ¶¶ 5-6, 8-10.) Costigan asserts that prior to March 13, 2020, Adjusters had several types of work settings, often moving from one setting to another, and sometimes working in hybrid settings. (Id. ¶ 7.) However, on March 13, 2020 – due to the COVID-19 pandemic – Defendant converted all its Adjusters to work from home positions regardless of what their prior positions had been. (Id. ¶ 13.) Beginning in the fall of 2020, some Adjusters gradually returned to work in the field, with their schedules continuing to vary based on various circumstances. (Id. ¶¶ 14, 16.)

Regarding employee breaks, Costigan states that while Adjusters work from home, management cannot observe when they are actually working. (Id. ¶ 18.) With respect to meal breaks, Adjusters working from home take their meal breaks when it fits into their home life, while Field Adjusters take their meal breaks when it fits into their appointment schedule. (Id. ¶¶ 18 -19.) Others elect to work through their lunch break and end their workday early. (Id. ¶ 19.)

Regarding overtime, Costigan explains that for a few months immediately after the COVID-19 pandemic, Defendant restricted Adjusters from working overtime, since claims dropped sharply during the pandemic and there was not enough work to fill the day. (Id. ¶ 24.)

However, as Adjusters resumed working in the field, work assignments have been adjusted by local management on an ongoing basis. (Id.) In the New York region, beginning in the fall of 2020, Defendant openly encouraged Adjusters to work overtime hours to offset the employee losses and concerns in working from locations other than from home because of COVID-19, incentivizing the same by a financial incentive program running from July through September 2021 that paid Adjusters money over and above the overtime pay if they hit certain goals on a bi-weekly basis. (Id. ¶ 25).

Costigan further explains Defendant's overtime policy by providing that if an Adjuster requests additional time (overtime) because they have fallen behind, the supervisor may: (1) grant overtime; (2) may tell the Adjuster to work the additional time but take time off later in the workweek to keep the hours below forty; or (3) may stop assigning new claims to the Adjuster until they catch up. (Id. ¶ 26). However, if an Adjuster works overtime without obtaining prior approval, they are instructed as a matter of course to record the time to ensure they are paid appropriately. (Id.) If a supervisor learns that an Adjuster has worked without recording the time, the supervisor is supposed to admonish the Adjuster and enter the time so that the Adjuster is paid correctly. (Id.)

Regarding the record keeping of Adjusters' hours, Costigan explains that Defendant's system cannot measure an Adjuster's hours, since there is no way to monitor what is going on between estimate submissions. (Id. ¶ 31.) Since the Adjuster could be working while eating lunch, walking the dog, or going to a doctor's appointment, even if an Adjuster works outside regular business hours, that does not mean they have actually worked overtime. (Id.) Costigan states that it is not unusual for an Adjuster to work additional hours on days during the week and then take an early weekend, since pursuant to the Defendant's Associate Handbook, (DE

10

[49-4]), if an associate works a schedule other than the default schedule, it is their responsibility to change their work schedule in WorkDay (the company's timekeeping system) through the Request Schedule Process. (Id. ¶¶ 33-34). Finally, Adjusters are required to certify that the time entered into WorkDay is true and correct before submitting it to the Defendant. (Id. ¶ 34.)

In addition to Costigan's declaration, Defendant puts forth several declarations from Defendant Adjusters supporting Costigan's account of Defendant's compensation, breaks, and overtime policies, all providing that they have been paid for all hours they reported to Defendant. (DE [50].)

Having set forth the parties' positions and supporting documentation, this Court now turns to the merits of the motion.

DISCUSSION

I.    Conditional Collective Action Certification: Legal Principles

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions. See 29 U.S.C. §§ 206-207. Section 216(b) of that statute provides an employee with a private right of action to recover overtime compensation and/or minimum wages on behalf of himself, as well as other similarly situated employees. Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties, which consent is filed in the court in which the action is brought. See 29 U.S.C. § 216(b); Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. See Mongiove v. Nate's Corp., No. 15-CV-1024, 2016 WL 590460, at * 1 (E.D.N.Y. Feb. 11, 2016). First, the court determines whether the proposed class members are similarly situated with respect to the alleged FLSA violations. See

11

Myers v. Hertz, 624 F.3d 537, 554-55 (2d Cir. 2010); Wang v. Shun Lee Palace Rest., Inc., No. 17-CV-0840, 2018 WL 3155835, at *3 (S.D.N.Y. June 28, 2018); Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2018 WL 1597389, at *5 (E.D.N.Y. Apr. 2, 2018); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides the similarity question in the affirmative, appropriate notice is sent and members of the collective may thereafter "opt-in" by consenting in writing to be bound by the result of the suit. See Sultonmurodov v. Mesivta of Long Beach, No. 15-CV-1654, 2015 WL 9273948, at *2 (E.D.N.Y. Dec. 17. 2015); Rubery, 569 F. Supp. 2d at 336; see also 29 U.S.C. § 216(b).

The second step, which typically occurs after the completion of discovery, requires the court to make renewed factual findings as to whether the class members are actually similarly situated. See Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Bifulco, 262 F.R.D. at 212 (quotations and citations omitted). In the event that they are not, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Rubery, 569 F. Supp. 2d at 336); see also Jin, 2018 WL 1597389, at *5.

The instant motion concerns only the first step, i.e., whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," Castillo v. Perfume Worldwide Inc., No. 17-2972, 2018 WL 1581975, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting Bifulco, 262 F.R.D. at 212), and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential opt-

in plaintiffs together were victims of a common policy or plan that violated the law.'" <u>Myers</u>,

624 F.3d at 555 (quoting <u>Hoffman v. Sbarro, Inc.</u>, 982 F. Supp. 249, 261 (S.D.N.Y. 1997));

<u>Trinidad v. Pret A Manger (USA) Ltd.</u>, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013).

      Importantly, the issue of "similarly situated" refers not to similarity of job duties, but to

similarity in pay structure. Thus, courts in this district and elsewhere routinely reject attempts to

limit certification based on alleged dissimilarity of job function. <u>See, e.g.</u>, <u>Ritz v. Mike Rory</u>

<u>Corp.</u>, No. 12 CV 367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting

conditional class to bartenders and instead, including all tipped service workers in conditional

class); <u>Calderon v. King Umberto, Inc.</u>, 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to

limit certification to positions held by named plaintiffs); <u>Iglesias-Mendoza v. La Belle Farm,</u>

<u>Inc.</u>, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting as frivolous defendant's argument that

certification should be limited to duck feeders); <u>Summa v. Hofstra Univ.</u>, 715 F. Supp. 2d 378,

391 (E.D.N.Y. 2010) (certifying employees despite varying positions and functions).

Additionally, it is well-recognized that the burden at the conditional certification stage is so low

that even Plaintiff's lone affidavit setting forth a common payment scheme may suffice. <u>See</u>

<u>Sultonmurodov</u>, 2015 WL 9273948, at *2.

## II.    <u>The Motion for Conditional Certification is Granted</u>

      Defendant opposes the within motion on the ground that Plaintiff's submission fails to

sustain even the limited burden of proof necessary for notice of a collective action to be sent,

arguing that Plaintiff has not demonstrated a common unlawful compensation policy, (Def.

Mem. 2, 15), and thus Plaintiff must rely on representative evidence, which would require

individualized determinations. (<u>Id.</u> 1, 16.) This Court disagrees. Plaintiff has set forth sufficient

facts to support the modest factual showing that Defendant's Adjusters were all subject to

common compensation and timekeeping practices, and routinely worked off-the-clock, in excess of their allotted 7.75 hours per day, without compensation, due to Defendant's common practices. (Id. 11.)

With respect to Defendant's notice of unpaid overtime, Defendant argues that determining whether it was aware of the unreported overtime, or whether an Adjuster's forty-five-minute meal break was interrupted, would also require an individualized consideration of each supervisor's knowledge. (Id. 9.) However, Defendant's contention regarding the individualized nature of these assessments is not the inquiry at this stage of the litigation. "The relevant issue here . . . is not whether Plaintiff and potential opt-in plaintiffs [are] identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week."  Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213 (D. Conn. 2012). Plaintiff is seeking only conditional certification and thus, "a fact-intensive inquiry is inappropriate at the notice stage . . . ." Id.

Deposition testimony corroborating Rieske's affidavit will be more availing at the next stage of this litigation, which will take place at the close of fact discovery. At that time, if requested, the Court will make renewed factual findings to determine whether Rieske is actually similarly situated to other employees. See Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2014 WL 11035376, at *7 (E.D.N.Y. July 29, 2014) ("After discovery, the class 'may be de-certified if the record reveals that they are not [similarly situated] . . . .'") (citation omitted). At this stage, however, Defendant's opposition papers serve only to create a question of fact; they do not, as a matter of law, defeat the motion for conditional certification as "the merits of plaintiff['s] claims are not at issue on a motion for conditional certification."  Marin, 2014 WL 11035376, at *7 (quoting Laroque v. Domino's Pizza, 557 F. Supp. 2d 346, 345 (E.D.N.Y. 2008)); see also Lujan

14

v. Cabana Mgmt., Inc., No. 10-CV-755, 2011 WL 317984, at *6 (E.D.N.Y. Feb. 1, 2011)

(finding that defendants' evidentiary showing was "at a minimum, a 'contested area of fact

requiring discovery, and not a basis for denying conditional certification") (citation omitted).

Accordingly, Plaintiff's motion for conditional certification of a collective action is

granted.

III.    Notice

A.    Scope of Notice

Plaintiff seeks to send notice of this lawsuit to all Adjusters who worked for

GEICO throughout New York at any time from November 28, 2018 to the present, representing

three years preceding the filing of the within motion for conditional certification, plus the 162

days that were tolled per the Court's November 18, 2021 Order. (Pl. Mem. 20) (referencing DE

[24] at ¶ 7.) Defendant argues that this proposed time period is incorrect, and that the eligible

start date should be three years plus 162 days from the date the consent is filed and excluding

those employees who only became employed after September 1, 2020. (Def. Mem.  25.) This

Court agrees with the Plaintiff in that the scope of notice shall be three years preceding the

filing of the motion for conditional certification.

Although the FLSA's statute of limitations ordinarily runs from the date an opt-in files a

consent form, where plaintiffs have diligently pursued their claims, some courts have equitably

tolled the statute of limitations while a motion for conditional certification is pending before the

court. See Barry v. S.E.B. Serv. of N.Y., Inc., No. 11-CV-5089, 2013 WL 6150718, at *10

(E.D.N.Y. Nov. 22, 2013) (citing McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445

(S.D.N.Y. Apr. 9, 2012)). Courts have discretion to equitably toll the limitations period in

appropriate cases in order "to avoid inequitable circumstances." Yahraes v. Restaurant Assocs.

Events Corp., No. 10-CV-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). As the court

stated in McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, "the delay caused by the time

required for a court to rule on a motion, such as one for certification of a collective action in a

FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the

equitable tolling doctrine." Id. at 445 (quoting Yahraes, 2011 WL 844963, at *2 (collecting

cases)).

Accordingly, Plaintiff's proposed notice shall be disseminated to all Adjusters employed

by Defendant throughout New York at any time from November 28, 2018 to the present,

representing three years preceding the filing of the motion for conditional certification, plus the

162 days that were tolled per the Court's November 18, 2021 Order.

B.    Form of Notice

Plaintiff proposes disseminating notice by mail, e-mail, and text message, with

reminder notices issuing thirty days prior to the end of the opt-in period, allowing potential

plaintiffs sixty days during which to determine whether to opt in. (Pl. Mem. 21-22.) Plaintiff

also proposes the creation of a website that will permit potential opt-in plaintiffs to

electronically submit a consent form. (Id.) Defendant opposes this proposed notice and urges

the court to limit notice to a single mailed notice, (Def. Mem. 23), and further opposes the

creation of a website for potential opt-ins to submit consent forms, since there has been no

factual showing that a mailing would be ineffective or that Defendant cannot provide sufficient

contact information for potential opt-ins. (Id. 24). This court agrees with Plaintiff, in part, and

grants notice by means of mailing, email, and text-message. This court also grants the Plaintiff's

request to issue reminder notices thirty days before the end of the opt-in period and further

specifies a sixty-day opt-in period for potential plaintiffs. However, the Court denies Plaintiff's

request to create a website that would permit potential opt-in plaintiffs to electronically submit a consent form.

      With respect to Plaintiff's first request – to issue notice by means of mailing, email, and text-message – the typical methods for disseminating notice to putative collective action members are through the United States mail and by posting hard copies at Defendants' places of business. See, e.g., Trinidad, 962 F. Supp. 2d at 564; Malloy v. Richard Fleischman & Assocs., Inc., No. 09-cv-322, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009). However, given the rise in remote work following the COVID-19 pandemic, coupled with the varying nature of the Adjuster's day-to-day work schedule, an argument put forth by Defendant, (Def. Mem. 6-7), posting a hard copy at Defendant's office would have little effect in notifying potential opt-in plaintiffs of this action. The facts in this case indicate a need for notice to be disseminated through more updated means. See Valdez v. MichPat & Fam, LLC, 20-CV-2570, 2022 WL 950450, at *15 (E.D.N.Y. Mar. 30, 2022) ("Objections to notice by e-mail and text message are 'quite outdated and not in touch with the reality of current life in the United States of America.'"); see also Millin v. Brooklyn Born Chocolate, LLC, No. 19-CV-3346, 2020 WL 2198125, at *3 ("There is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA."). As such, this Court grants notice by means of the traditional mailing, as well as via email and text message.

      With respect to Plaintiff's second request – to issue reminder notices thirty days prior to the end of the opt-in period – courts in this district routinely authorize such reminder notices. See Valdez, 2022 WL 950450, at *16 ("Reminder notices are appropriate '[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]") (alterations in original). See also Williams v. Movage, Inc., 17

Civ. 2628, 2018 WL 1940435, at *10 (S.D.N.Y. Apr. 24, 2018) (collecting numerous cases in this Circuit where courts have consistently authorized these types of reminder notices). This Court sees no reason to deviate from the common practice in this circuit of permitting plaintiffs to issue reminder notices thirty days prior to the end of the opt-in period. As such, Plaintiff's request for reminder notices is granted.

With respect to Plaintiff's third request – for a sixty-day opt-in period – Plaintiff argues that a sixty-day opt-in period allows individuals to research the case, speak with Plaintiff's counsel, consult with their families, and weigh this important decision, and is a common notice period in collective actions (Pl. Mem. 22) (quoting Villalta v. 101-11 86 Ave. Corp, 20-CV-0249, 2022 WL 462408, at *9 (E.D.N.Y. Feb. 15, 2022) (authorizing sixty-day notice period and collecting cases)). In light of the fact that Defendant does not oppose this request, a sixty-day opt-in period is granted.

Finally, Plaintiff's fourth request is to create a website that would permit potential opt-in plaintiffs to electronically submit a consent form. Defendant argues that there has been no factual showing that a mailing would be ineffective or that it cannot provide sufficient contact information for potential opt-ins. (Def. Mem. 24.) Defendant cites to a number of cases that support the denial of Plaintiff's request to create a website. See, e.g., Hong v. Haiku @ WP, Inc., 582 F. Supp. 3d 117, 135 (S.D.N.Y. Jan. 28, 2022) (denying request to post information on Plaintiffs' counsel website as unnecessary); Chiu v. Am. Yuexianggui of LI LLC, CV 18-5091, 2020 WL 3618892, at *10 (E.D.N.Y July 2, 2020) (denying request to post notice on plaintiff's counsel's website as insufficiently supported); Qian Xiong Lin v. DJ's Intl. Buffet, Inc., CV 17-4994, 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (finding that posting on social media and websites could prejudice Defendants). This Court finds the creation of a website that would

18

permit potential opt-in plaintiffs to electronically submit a consent form to be unnecessary since potential opt-in plaintiffs are likely to be reached by the several forms of notice granted above.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, is granted. The collective action shall consist of all current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters (including comparable roles with different titles) throughout the State of New York at any time from November 28, 2018 to the present. Notice shall be disseminated via traditional mail, email, and text-message, with reminder notices issued thirty days prior to the end of the opt-in period. The opt-in period for potential opt-in plaintiffs shall be sixty days. Defendant is directed to provide Plaintiff with the names, mailing addresses, telephone numbers, dates of employment, locations of employment, and work and personal email addresses of all employees who may be potential plaintiffs herein within ten (10) days of the date of this Order. Counsel are directed to confer and to submit an agreed-upon form of notice within one (1) week of this Order.

**SO ORDERED:**

Dated: Central Islip, New York
       November 22, 2022

                                        /s/ Anne Y. Shields
                                        Anne Y. Shields
                                        United States Magistrate Judge