UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER RIESKE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY INC. d/b/a GEICO,<br><br>Defendant. | Case No. 2:21-cv-04122-OEM-AYS |

**DECLARATION OF GREGG I. SHAVITZ, ESQ. IN SUPPORT OF UNOPPOSED MOTION TO APPROVE FAIR LABOR STANDARDS ACT SETTLEMENT**

1. I am the founding partner of the Shavitz Law Group, P.A. ("SLG") which is based in Boca Raton, Florida. SLG is a nine attorney firm based in Boca Raton, Florida with an office in New York, New York, that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws.

2. I am an attorney admitted to practice law in this Court *pro hac vice*.

3. I submit this declaration in support of Plaintiffs' Unopposed Motion to Approve Fair Labor Standards Act Settlement. I have personal knowledge of the matters set forth herein and would so testify if called as a witness.

4. For the past 25 years, my firm has focused on representing workers in wage and hour matters. My background and those of other SLG employees who worked on this matter are detailed below.

5. I am a graduate of the University of Miami School of Law with an undergraduate

degree from Tufts University.

6. I am an experienced litigator, trial attorney, and member of the bar of the U.S. District Court for the Southern District of Florida and the Florida Bar since 1994, and am also admitted to U.S. District Courts for the Middle and Northern Districts of Florida, the District of Colorado, the United States Eleventh Circuit Court of Appeals, and United States Third Circuit Court of Appeals. Additionally, I have lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and have spoken at the Labor and Employment Section Certification Review Seminar as well as the Academy of Florida Trial Lawyers Workhorse Seminars. I have also been awarded Florida Trend Magazine's Legal Elite for various years including 2004, 2005, 2006, 2014, 2015, and 2020 in the area of Labor & Employment law; South Florida Legal Guide – Top Lawyer – Wage and Hour law – 2009-present; Top Lawyer Up and Comer – Wage and Hour law – 2004, 2006, and 2009; and South Florida Legal Guide – Top Lawyers List – 2009-present; among other awards and honors. I have also earned the distinction of Top Lawyer in Palm Beach Illustrated (2018, 2019, and 2020) and am a lifelong fellow of the Florida Bar Foundation. I have held the highest AV Peer Review Rating from LexisNexis Martindale-Hubbell for preeminent attorneys from 2000 to the present.

7. Attorney Michael J. Palitz is a Partner in SLG's New York office and has been with the firm since 2015. After receiving his Juris Doctor degree, cum laude, from Pace Law School in 2010 where he also served as the Editor-in-Chief of the Pace International Law Review, he was admitted to the New Jersey and New York Bars in June 2010 and September 2010, respectively. Mr. Palitz also is admitted to this Court and the U.S. District Courts for the District of New Jersey, the Eastern District of New York, the Southern District of New York, the Northern District of New York, the District of Colorado, and the Western District of New York.

He has presented before the Suffolk County Bar Association on FLSA issues. Since graduating from law school, Mr. Palitz has focused his practice exclusively on workers' rights and litigating complex wage and hour class and collective actions throughout the country, including trying a Fair Labor Standards Act collective action arbitration to a verdict for employees. Mr. Palitz graduated from the College of the Holy Cross in 2005 with a B.A. and majored in Economics and History. Outside of his legal practice, Mr. Palitz is also an active volunteer in his community in Rockville Centre, New York serving on the Board of Directors of Rockville Centre Little League and Rockville Centre Tigers Baseball, as well as being a member of the St. Agnes Cathedral School's Fathers' Club.

8. Attorney Tamra Givens joined SLG in 2019 and is a Senior Associate with the firm. She has been admitted to The Florida Bar since 2003. She obtained her undergraduate degree in Psychology from the University of Florida, with honors, in 2000, and earned her law degree from the University of Florida, cum laude, in 2003. During law school, Ms. Givens was a member of the Florida Law Review and completed an internship at the Florida Supreme Court where she served as an intern to Justice Harry Lee Anstead. Ms. Givens has been a member of the Florida bar since 2003, and is also admitted to practice in this Court and the U.S. District Courts for the Middle District of Florida, Southern District of Florida, District of Colorado and Eastern District of Michigan, and in the United States Court of Appeals for the Third, Ninth and Eleventh Circuits. Ms. Givens has dedicated her career to representing employees and consumers in class litigation. Ms. Givens is a former law clerk to the Honorable James D. Whittemore, United States District Judge, United States District Court for the Middle District of Florida.

9. Attorney Christine M. Duignan is Of Counsel to SLG and has been with the firm for more than 20 years. Ms. Duignan is an employment attorney with more than 30 years'

experience. Ms. Duignan provides litigation support in complex wage and hour actions arising under the Fair Labor Standards Act and Fed. R. Civ. P. Rule 23, in a variety of jurisdictions nationally. Ms. Duignan has been a member of the Florida Bar since 1991 when she received her Juris Doctor degree with high honors, from University of Florida. She is admitted to the Florida Bar, the U.S. District Court for the Southern District of Florida, the Eleventh Circuit Court of Appeals and the U.S. Supreme Court.

10. Attorney Marilyn Linares joined Shavitz Law Group, P.A. in 2023 and is an Associate with the firm. She has been admitted to the Florida Bar since 2021. Ms. Linares obtained her undergraduate degree in Political Science from Florida Atlantic University and earned her law degree from Florida Coastal School of Law. Prior to law school, Ms. Linares was a legal assistant with SLG, and during law school, continued as a law clerk with SLG. Ms. Linares has been a member of the North Carolina Bar since 2022 and is also admitted to the United States District Court for the Southern District of Florida.

11. Serena Eifert is an experienced legal assistant at SLG. Ms. Eifert provides litigation support including case investigations, client intakes, and handling discovery matters and document productions.

12. SLG has significant experience prosecuting wage and hour cases, including class and collective actions. In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

*Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (S.D.N.Y.);

*Amador v. Morgan Stanley & Co, LLC*, No. 11 Civ. 4326 (S.D.N.Y.);

*Ayala v. GEICO*, No. 18 Civ. 03583 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (S.D.N.Y.);

*Blum, et al. v. Merrill Lynch & Co., Inc*., No. 15 Civ. 1636 (S.D.N.Y.);

*Calabresi v. TD Bank*, N.A., No. 13 Civ. 0637 (E.D.N.Y.);

*Capalupi v. People's United Financial, Inc.*, No. 15 Civ. 5247 (E.D.N.Y.);

*Clem v. KeyBank, N.A.*, No. 13 Civ. 789 (S.D.N.Y.);

*Heitzenrater v. OfficeMax, Inc*., No. 12 Civ. 900S (W.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (S.D.N.Y.);

*Hirst, et al. v. M&T Bank, et al.*, No. 511428/2015 (N.Y. Sup. Ct.);

*Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219 (D. Mass.);

*Krokos v. Fresh Market, Inc.*, No. 16-cv-12082 (D. Mass.);

*Kulauzovic v. Citibank*, N.A., No. 507538/2018 (N.Y. Sup. Ct.);

*Palacio v. E*TRADE Fin. Corp*., No. 10 Civ. 4030 (S.D.N.Y);

*Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (E.D.N.Y.);

*Reiburn v. Merrill Lynch & Co., Inc*., No. 15 Civ. 2960 (S.D.N.Y.);

*Robbins v. Abercrombie & Fitch Co.*, No. 15 Civ. 6187 (W.D.N.Y.);

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (S.D.N.Y.);

*Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531 (S.D.N.Y.);

*Amaraut v. Sprint/United Management Company*, No. 19-cv-411 (S.D. Cal.);

*Besic v. Byline Bank, Inc., et al.*, No. 15 C 8003 (N.D. Ill.);

*Biscoe-Grey v. Sears Holding Corp*., No. 09-81408-Civ-Marra / Johnson (S.D. Fla.);

*Briggs v. PNC Fin. Servs. Gr*., No. 15 Civ. 10447 (N.D. Ill.);

*Bucceri v. Cumberland Farms, Inc.*, No. 15-cv-13955 (D. Mass.);

*Ciomcia v. Beall's Inc*., Case No. 2:17-cv-14444 (S.D. Fla.);

*Cerrone v. KB Home Florida, LLC* et al., No. 07-14402-Civ (S.D. Fla.);

*Danley v. Office Depot, Inc., et al.*, No. 9:14-cv-81469 (S.D. Fla.);

*DeVries v. Morgan Stanley & Co. LLC*, No. 12-CV-81223 (S.D. Fla.);

*Fiore v. Goodyear Tire & Rubber Co.*, No. 2:09-CV-843-FtM-29SPC (M.D. Fla.);

*Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.);

*Juric v. Dick's Sporting Goods, Inc.,* No. 20-cv-651 (W.D. Pa.);

*Kampfer v. Fifth Third Bank*, No. 14-cv-02849 (N.D. Ohio);

*Koszyk v. Country Fin*., No. 16 Civ. 3571 (N.D. Ill.);

*Magee v. Francesca's Holdings Corp.,* No. 1:17-cv-00565 (D.N.J.);

*Martinez v. Mobilelink*, No. 20-cv-01149 (S.D. Tex.);

*McCue v. MB Fin., Inc.*, No. 15 Civ. 988 (N.D. Ill.);

*Nash v. CVS Caremark Corp*., No. 09 Civ. 79 (D.R.I.);

*Prena v. BMO Financial Corp*., et al., No. 1:14-cv-09175 (N.D. Ill.);

*Przytula v. Bed Bath & Beyond, Inc*., No. 17 Civ. 5124 (N.D. Ill.);

*Raley v. Kohl's Corporation, et al*., No. 8:09-cv-2340 (M.D. Fla.);

*Roberts v. TJX Cos*., No. 13 Civ. 13142 (D. Mass.);

*Romero v. Florida Power & Light Company*, No. 6:09-cv-1401-Orl-35 (M.D. Fla.);

*Saliford v. Regions Financial Corp. et al.*, No. 10-610310-CIV (S.D. Fla.);

*Simpkins v. Pulte Home Corp*., No. 6:08-cv-00130 (M.D. Fla.);

*Snodgrass v. Bob Evans Farms, Inc.*, No. 12-cv-768 (S.D. Ohio);

*Stallard v. Fifth Third Bank, et al*, No. 2:12-cv-01092 (W.D. Pa.);

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (N.D. Ill.);

*Waggoner v. U.S. Bancorp*, No. 14-cv-1626 (N.D. Ohio);

*Watson v. BMO Financial Corp.*, No. 15-cv-11881 (E.D. Ill.);

*Wright v. Flagstar Bank FSB*, No. 13 Civ. 15069 (E.D. Mich.)

**PROCEDURAL HISTORY**

***Rieske v. GEICO*, No. 2:21-cv-04122 (E.D.N.Y.)**

13. On July 22, 2021, Plaintiff Rieske filed the Complaint alleging that he and other GEICO Auto Damage Adjusters in New York worked unpaid time off-the-clock and without compensation. ECF No. 1. The Complaint alleged violations of the Fair Labor Standards Act and New York Labor Law. ECF No. 1.

14. Plaintiff amended the Complaint on August 23, 2021 (ECF No. 8) and GEICO answered on October 26, 2021. ECF No. 18.

15. Before GEICO answered, Plaintiff sought leave to file a motion for FLSA conditional certification (ECF No. 9). The Court denied that request without prejudice, requiring the parties to first complete some initial FLSA discovery and mediate the claims. ECF No. 24.

16. The initial FLSA discovery required Plaintiff and Opt-Ins to respond to Court interrogatories and produce certain documents. Plaintiff and the Opt-Ins provided these interrogatory responses. ECF No. 28 to 28-8.

17. On February 10, 2022, the parties selected the mediator per the Court's FLSA scheduling Order (ECF No. 24) and agreed to mediate on April 6, 2022 before mediator Michael Starr, Esq. Plaintiff's counsel prepared a mediation statement outlining the claims and law supporting such claims.

18. The parties mediated the claims before Mr. Starr on April 6, 2022 and did not reach a resolution.

19. On April 14, 2024, Plaintiff filed a second request to file a motion for conditional certification (ECF No. 32) and the Court established a briefing schedule. Plaintiffs' counsel

obtained declarations and other evidence to support their motion and demonstrate the common unpaid wage practices at GEICO. On July 6, 2022, Plaintiff submitted the fully-briefed motion for conditional certification. ECF Nos. 44 to 50.

20. After receiving leave to amend the complaint to remove Plaintiff Khalfan who no longer wished to participate, Plaintiff Rieske filed the Amended Complaint on July 27, 2022. ECF No. 57.

21. On November 22, 2022, Magistrate Shields granted Plaintiff's motion for conditional certification.

22. GEICO filed objections to Magistrate Shields' Order. ECF No. 70. Plaintiff filed his opposition on December 13, 2022. ECF No. 71. On February 3, 2023, Judge Azrack overruled GEICO's objections.

23. Plaintiff's counsel worked with a claims administrator to facilitate notice to the FLSA collective members in accordance with the Court's Order.

24. Following the close of the notice period, the Parties conferred regarding an appropriate scope of discovery of those who joined the case. Given the many issues to address, the Parties' counsel spent significant time attempting to reach an agreement on an acceptable discovery plan. Among other issues, the parties had differing views as to the percentage of opt-ins that would be subject depositions. The Court ordered that the parties conduct 17 depositions of named plaintiff and 16 Opt-in Plaintiffs. ECF No 107. GEICO served interrogatories and requests for production on Opt-in Plaintiffs designated for depositions, to which they responded and produced responsive documents.

25. The Parties then briefed the issue as to whether GEICO can serve discovery on all Opt-In Plaintiffs. ECF Nos. 110-111. On September 11, 2023, the Court permitted some

discovery requests to be served upon all Opt-In Plaintiffs. Following this Order, Plaintiff's counsel worked with the Opt-In Plaintiffs to obtain 122 discovery responses. Plaintiff's counsel drafted all of these responses for the Opt-In Plaintiffs.

26. The Parties also negotiated and agreed upon a proposed Protective Order regarding discovery materials. ECF No. 112.

27. Plaintiff also served multiple sets of discovery requests on GEICO. GEICO produced over 18,000 pages of documents which included policies, time records, pay records, call logs, text messages, performance reviews, claims handling information, and other personnel documents and data relating to the claims and defenses. In addition, GEICO produced entire e-mail accounts for Plaintiff and the Opt-Ins designated for deposition. Plaintiff's counsel reviewed this voluminous document production.

28. The Parties also conducted about 20 depositions of Plaintiff, Opt-In Plaintiffs, and GEICO's supervisors.

29. Plaintiff's counsel engaged an expert to assist in the review of GEICO's time and pay records and other documents and data to demonstrate work performed while off-the-clock. Plaintiff's expert was intending to prepare a report before this matter settled.

***Biscardi, et al. v. GEICO, No. 8:21-cv-02240 (D. Maryland)***

30. On August 31, 2022, Plaintiffs filed a complaint against GEICO also alleging unpaid time worked off-the-clock on behalf of Auto Damages Adjusters in violation of the FLSA and certain state laws. ECF No 1. Thereafter, the Plaintiffs filed an Amended Complaint excluding Auto Adjusters who worked in California, Florida, Massachusetts, New Jersey, New York, North Carolina, Ohio, and Pennsylvania because those Auto Adjusters were covered by claims already pending in those states. ECF No. 44.

31. On April 29, 2022, Plaintiffs filed a motion for conditional certification supported by numerous declarations and other evidence obtained by Plaintiffs' counsel.

32. On January 11, 2023, the Court granted Plaintiffs' motion for conditional certification and allowed notice to be sent to Auto Damage Adjusters in the FLSA collective action.

33. Plaintiff's counsel again engaged a claims administrator to facilitate the notice process and send the notice to all covered Auto Damage Adjusters.

34. The Parties also engaged in substantial discovery in this matter. The Parties served and responded to discovery requests.

35. The Parties produced about 22,000 pages of personnel documents, ESI, pay, time records, text messages, call logs, and other data and documents, and produced entire email accounts for the Plaintiffs and Opt-Ins designated.

36. The Parties also conducted depositions and engaged in discovery conferrals regarding perceived discovery deficiencies both with the discovery responses and the document productions.

***Mediation and Settlement***

37. In about March 2024, counsel for GEICO and Plaintiff discussed the possibility of mediation to attempt to resolve these claims and those in *Biscardi* (case history addressed below). The Parties hired Stephen Sonnenberg, Esq. who is a highly-experienced wage and hour mediator at JAMS in New York City. The Parties agreed to mediate on April 18, 2024.

38. In advance of the mediation, Plaintiff's counsel prepared a damages model and analyzed numerous time and pay records. Plaintiff's counsel also reviewed the significant discovery and deposition transcripts for the mediation statement.

39. Plaintiff's counsel prepared a 23-page mediation statement with substantial record evidence and law to support Plaintiff's claims in this case.

40. On April 18, 2024, the Parties had a full-day mediation with Mr. Sonnenberg and did not reach a resolution of the matter. Mr. Sonnenberg made a mediator's proposal to resolve the claims. The Parties accepted the mediator's proposal on April 25, 2024.

41. Following the acceptance, Plaintiff's counsel prepared all of the settlement documents including the agreement, approval motion papers, and notice to collective members.

42. On June 28, 2024, the Parties executed the Settlement Agreement.

***Settlement and Terms***

43. The Parties have litigated these matters for more than three years. Plaintiffs and Plaintiffs' counsel are very familiar with the claims and defenses and the risks of continued litigation. There is a *bona fide* dispute between the Parties as to, among other things, (1) whether Plaintiffs worked off-the-clock; (2) whether GEICO knew or should have known about Plaintiffs' work off-the-clock; (3) if Plaintiffs worked off-the-clock, how much time they worked off-the-clock and how frequently they did so; (4) whether Plaintiffs' claims were susceptible to collective/class-wide proof; (5) whether GEICO acted in good faith; (6) whether Plaintiffs could prove that GEICO willfully violated the law; (7) the measure of damages; and (8) the impact of GEICO's timekeeping change in January 2023 and whether damages even existed following that change.

44. Plaintiffs' counsel interviewed hundreds of Auto Damage Adjusters in the last three years regarding their claims and reviewed thousands of documents.

45. Given all of these risks and the knowledge obtained throughout these litigations, Plaintiffs and their counsel believe that a compromised resolution is in all Parties' best interests,

especially Plaintiffs who are receiving money through this settlement which they would not have received if they lost at trial or on appeal.

46. The settlement provides for a common fund settlement of $6,000,000. Exhibit A (Agreement). The settlement is non-reversionary meaning that all funds are paid out to Plaintiffs, Opt-In Plaintiffs, Plaintiffs' counsel, and the settlement administrator. No money from this settlement will be returned to GEICO.

47. The settlement provides for payment of Plaintiffs' counsel's attorneys' fees of one-third of the settlement amount ($2,000,000) plus litigation costs and expenses. Plaintiffs' counsel have $97,238.73 in costs and expenses in the *Rieske* and *Biscardi* matters. Such costs include ESI hosting and processing costs, filing fees, service of process fees, deposition transcript costs, claims administration costs to handle the FLSA notice administration in *Rieske* and *Biscardi*, mediators' fees and costs, legal research and expert costs.

48. The settlement provides for general release/service awards for the Named Plaintiffs in *Biscardi* and *Rieske* totaling $70,000. These Plaintiffs stepped up to bring these lawsuits and seek unpaid wages from GEICO for themselves and other Auto Damages Adjusters. They did so at significant risk of being blackballed in their industries or retaliated against by GEICO (i.e., Plaintiff Rieske is a current GEICO employee). The Named Plaintiffs remained highly active in the litigation and settlement, conferring with Plaintiffs' counsel often about the case and strategies. They were invaluable in providing the information to help Plaintiffs' counsel effectively represent them and the Opt-In Plaintiffs in these matters. The settlement also provides for $1,000 general release/service award payments to the 28 Opt-In Plaintiffs who provided deposition testimony in *Rieske* and *Biscardi*. These Opt-In Plaintiffs provided key evidence to support their claims and those of other Auto Damage Adjusters.

49. The settlement also covers the costs of the settlement administrator (estimated to be $17,750) to mail the settlement notices, checks, establish the Qualified Settlement Fund, handle the tax filings and payments, and handle other necessary matters to ensure the settlement is administered correctly.

50. The settlement also covers the employee-side share of payroll taxes. GEICO shall separately pay its share of payroll taxes in addition to the $6,000,000 settlement amount.

***Attorneys' Fees***

51. The time that Plaintiffs' counsel spent litigating the *Rieske* and *Biscardi* matters is considerable. As of June 27, 2024, SLG spent 1,668 hours and incurred $981,580 in total fees. Plaintiffs' counsel collectively spent 3,112.4 hours and incurred $2,017,592.00 in total fees. Declaration of Carolyn Cottrell, Esq. at ¶¶ 39-40; Declaration of Nicholas Migliaccio, Esq. at ¶ 13.

52. Plaintiffs' counsel can provide the attorney fee ledgers at the Court's request. If requested, Plaintiffs' counsel respectfully asks permission to submit those records under seal to protect attorney work product and attorney-client privilege.

53. The chart below contains a breakdown of hours worked by each SLG timekeeper including their hourly rates on the *Rieske* and *Biscardi* matters:

| **Name** | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| Gregg I. Shavitz, Esq.<br><br>Managing Partner<br><br>30 Years Experience | $750.00 | 90 | $67,500 |

| | | | |
|---|---|---|---|
| Christine M. Duignan, Esq.<br><br>Of Counsel<br><br>33 Years Experience | $700.00 | 97 | $67,900 |
| Michael J. Palitz, Esq.<br><br>Partner<br><br>14 Years Experience | $650.00 | 556.1 | $361,465 |
| Tamra Givens, Esq.<br><br>Senior Associate<br><br>21 Years Experience | $650.00 | 661 | $429,650 |
| Marilyn Linares, Esq.<br><br>Associate<br><br>3 Years Experience | $450 | 51.6 | $23,220 |
| Serena Eifert<br><br>Paralegal | $150.00 | 212.3 | $31,845 |

54. SLG's rates have been regularly approved by courts. *E.g., Peterson v. Nelnet,* No. 17-cv-01064-NYW (D. Col. 2022) (Mr. Shavitz's rate was $750 per hour, Ms. Duignan's rate was $700.00 per hour; Mr. Palitz's rate was $650.00 per hour, and Ms. Eifert's rate was $150.00 per hour); *Slaughter v. Sykes Enters,* 2019 U.S. Dist. LEXIS 21767, at *25-27 (D. Colo. Feb. 11, 2019) (five-year old case, Mr. Shavitz's rate was $700 per hour and Ms. Duignan's rate was $600 per hour; other plaintiffs' counsel's rates were $950 and $700 per hour); *Amaraut v. Sprint/United Mgmt. Co.*, No. 19 Civ. 411, 2021 U.S. Dist. LEXIS 147176, at *20-21 (S.D. Cal. Aug. 5, 2021) (three-year old case, approving wage and hour class and collective action settlement with plaintiffs' counsel's rates ranging from $600 to $1,005; Shavitz Law Group was plaintiffs' counsel and their rates were $700 (Mr. Shavitz), $625 (Mr. Palitz), $600 (Ms. Duignan), $600 (Ms. Givens) and $150 (paralegal Ms. Eifert)).

55. SLG undertook this matter on a contingency basis in the face of significant risk. FLSA wage and hour cases of this type are, by their very nature, complicated, fact intensive, and time-consuming. SLG undertook this matter prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. SLG stood to gain nothing in the event the case was unsuccessful. SLG invested 1,668 hours of time, totaling $981,580, to litigate these claims. SLG also incurred $72,556.17 in costs, including for filing fees, service of process, notice administration, legal research, depositions, mediation fees, document management and expert fees. SLG knew in advance that there was a significant chance that SLG would recover nothing, even though SLG believed this was a meritorious case.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: June 28, 2024
Boca Raton, Florida

[signature]

Gregg I. Shavitz

# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of All Claims ("Agreement") is made by and between Named Plaintiffs Alexander Rieske, Bridget Biscardi, Craig Neidlinger, and Stephanie Koontz, individually and as collective action representatives of the Opt-In Plaintiffs listed on Exhibit A (collectively "Employees"), and Government Employees Insurance Company ("Company" or "GEICO") (Employees and Company are collectively the "Parties") with respect to the following facts:

A. Named Plaintiff Rieske filed a complaint in United States District Court for the Eastern District of New York alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law. The action is docketed as *Alexander Rieske v. GEICO*, Case No. 2:21-cv-04122 ("*Rieske*").

B. Named Plaintiffs Biscardi, Neidlinger, and Koontz filed a complaint in United States District Court for the District of Maryland alleging violations of the FLSA and Utah wage laws. The action is docketed as *Bridget Biscardi, et al. v. GEICO*, Case No. 8:21-cv-02240 ("*Biscardi*").

C. The Parties now desire to settle on the terms set forth below.

THEREFORE, in consideration of the promises and mutual agreements hereinafter set forth, the Parties agree as follows:

1. Payment to Employees, Plaintiffs' Counsel, and the Settlement Administrator.

1.1 In consideration for the release of claims herein, and the other promises made in this Agreement, Company will pay the gross amount of Six Million Dollars and zero cents ($6,000,000.00) ("Settlement Amount"). The Settlement Amount covers and includes payments to Plaintiffs and Employees, payments for Plaintiffs' attorneys' fees and costs, general release/service awards to the Plaintiffs and certain Opt-In Plaintiffs who provided deposition testimony, the employee-side payroll taxes, and the costs of the Settlement Administrator. The Settlement Amount does not include GEICO's share of payroll taxes, which GEICO shall pay separately and in addition to the Settlement Amount.

1.2 Within thirty (30) ) days after both courts have approved this settlement, GEICO shall fund the Settlement Amount by depositing funds in a Qualified Settlement Fund ("QSF") established by the Settlement Administrator. On the same date, GEICO shall provide the Settlement Administrator and Plaintiffs' Counsel with the following information for each Plaintiff and Employee: (1) full name; (2) last known mailing address; (3) last known e-mail address; and (4) dates of employment as Auto Damage Adjusters in the Collective Period (as defined in 1.5 below). GEICO shall separately send to the Settlement Administrator the social security numbers and states of employment of the Plaintiffs and Employees for tax withholding purposes.

1.3 In the settlement approval motion, Plaintiffs' Counsel shall seek one-third of the Settlement Amount as attorneys' fees. Plaintiffs' Counsel shall also seek approval of their litigation expenses and costs in the *Biscardi* and *Rieske* matters, including the costs of FLSA notice and opt-in administration, which are to be paid from the Settlement Amount. Plaintiffs' Counsel shall also seek approval of the costs of the Settlement Administrator to administer this settlement, which are to be paid from the Settlement Amount.

1.4 In the settlement approval motion, Plaintiffs shall seek general release/service awards of $20,000 each to Alexander Rieske and Bridget Biscardi and $15,000 each to Craig Neidlinger and Stephanie Koontz, to be paid from the Settlement Amount. Plaintiffs shall also seek general release/service awards totaling $1,000 each for Opt-In Plaintiff who gave deposition testimony in the *Biscardi* and *Rieske* matters, to be paid from the Settlement Amount: (in *Biscardi*) Craig Neidlinger, Bridget Biscardi, Stephanie Koontz, Daniel Simmons, Daniel Shippee, Matthew Nunez, Stephen Jackson, David Corbidge, David Putnam, Lynn Mishoe, Laura Adcock, Bonnie Nadeau, Cody Thomason, (in *Rieske* ) Hanssy Sandoval, John Sharkey, Stanley Fendryk, Sherita Murray, Travis Barnes, Lesly Tse, Alexander Rieske, Steven Blahowicz, Ryan Nolan, James Kovarik, Jordan Karawiecki, Racquel Bodensieck, Robert Grazier, Crystal Fraser, Leor Hadar.

1.5 The Net Settlement Amount is the Settlement Amount minus Plaintiffs' Counsel's Court-approved attorneys' fees and costs, the general release/service award payments, and the costs of the Settlement Administrator. The Settlement Administrator shall calculate the settlement shares of the Plaintiffs and Employees based upon the number of weeks of employment as Auto Damage Adjusters in the Collective Period (defined as (1) in *Biscardi,* August 31, 2018 to the date of settlement approval; and (2) in *Rieske*, July 22, 2015 to the date of settlement approval). Each Plaintiff and Employee shall receive one point for each week of such employment during the Collective Period. The Settlement Administrator shall calculate each Plaintiff or Employee's share as follows:

> To obtain each Plaintiff and Employee's settlement share, the Settlement Administrator shall divide the total weeks of employment as Auto Damage Adjusters for each Plaintiff and Employee in the Collective Period by the total weeks of employment for all Plaintiff and Employees in the Collective Period. The Settlement Administrator shall then multiply that number by the Net Settlement Amount to obtain the settlement share for each respective Plaintiff and Employee.[1]

[1] *Rieske* opt-in Plaintiff Bruce Fenton's claims arising from his employment in Florida were subject to a separate settlement. His settlement in *Rieske* shall be based solely on his length of service in New York. *Biscardi* opt-in Plaintiffs Scott Mattingly and Kevin Blackstone's claims arising from their employment in Massachusetts were subject to a separate settlement. Their settlements in *Biscardi* shall be based solely on their length of service in Nevada (Mattingly) and New Hampshire (Blackstone).

The following Employees are also opt-in plaintiffs in *Reloj v. GEICO*, Civil No. 3:21-cv-01751-L-

1.6 One-half of the settlement shares of the Plaintiffs and Employees shall be considered wages and the Settlement Administrator shall withhold the appropriate tax amounts. The remaining one-half of the settlement shares of the Plaintiffs and Employees shall be considered liquidated damages/non-wages and the Settlement Administrator shall not withhold taxes from such amounts.

1.7 Within twenty-one (21) days of GEICO funding the Settlement Amount, the Settlement Administrator shall mail a notice (Exhibit A) and settlement check to each Plaintiff and Employee. On the same date, the Settlement Administrator shall pay Plaintiffs' Counsel's Court-approved attorneys' fees and costs to Shavitz Law Group, P.A. No taxes shall be withheld from the payment to Shavitz Law Group, P.A. Plaintiffs' Counsel shall determine the division of fees among their firms.

1.8 The Settlement Administrator is solely responsible for all tax withholding for payments from the QSF and for submitting all necessary reports/paperwork to the tax authorities. The Settlement Administrator is also responsible for sending the necessary tax forms to Plaintiffs, Employees, and Plaintiffs' Counsel.

1.9 Plaintiffs and Employees shall have 120 days to cash their settlement checks ("Check Cashing Bar Date"). Sixty (60) days following the mailing of the settlement checks, the Settlement Administrator shall send a reminder postcard (Exhibit B) reminding any Plaintiffs and Employees who have not yet cashed their settlement checks to cash their settlement checks and the deadline to do so. Within 30 days of the Check Cashing Bar Date, the Settlement Administrator shall notify Plaintiffs' Counsel of the amount of the uncashed checks. Plaintiffs' Counsel shall decide whether to redistribute the funds to the Plaintiffs and Employees who cashed their checks or to distribute the funds to the *cy pres* beneficiary, Maryland Legal Aid.

1.10 The following preconditions must have occurred before the Settlement Amount is due: (i) Plaintiffs properly execute this Agreement; (ii) both courts enter an order granting the Parties' request to approve the settlement; and (iii) the *Rieske* and *Biscardi* cases are dismissed with prejudice.

1.11 Payments made under this Agreement are not intended to and will not (1) form the basis for additional contributions to or benefits under; (2) count as earnings or compensation with respect to; or (3) be considered or applied to for purposes of, the Company's profit sharing, pension, and 401(k) plans, or any other fringe benefit or retirement programs.

---

MSB (S.D. Cal). Their settlement shares under this Agreement shall be based solely on their length of service outside California. Kimberly Aronica opt-ed into *Rieske* and *Reloj*. Lyly Nguyen, Jessica Himes, Daniel Quiroz, David Snelling, Corey Nemeck-Jones, Tabitha Stevens, Kendrick A. Moon, Migel Bahena, and Casey Becker opted into *Biscardi* and *Reloj*.

2. Dismissal. After Plaintiffs execute this Agreement, the Parties will use best efforts and cooperate to obtain an order approving the settlement of the FLSA claims alleged in the lawsuit, and dismissing both the *Biscardi* and *Rieske* actions with prejudice, provided however than in no event shall the Settlement Amount be increased.

3. Warranty. Other than this lawsuit, Plaintiffs warrant they have contacted no governmental agency for the purpose of initiating a claim against the Released Parties based on the Released Claims or reporting potential legal violations by the Released Parties based on the Released Claims. Plaintiffs also agree not initiate, join, or continue any lawsuit, administrative charges or complaints, arbitrations, or proceedings against the Released Parties based on the Released Claims. If Plaintiffs are made members or representatives of a class in any proceeding against the Released Parties based on the Released Claims, they agree to opt out of the class at the first opportunity. Plaintiffs also understand they have waived and released the right to seek and agree not to seek any further relief from the Released Parties for the Released Claims.

4. Release.

4.1 Employees on behalf of themselves, their estates, heirs, spouses, executors, administrators, attorneys, agents and assigns, fully and finally release and discharge the Company and its former and present parents, subsidiaries and affiliated corporations and entities, and all of its current and former officers, directors, members, managers, employees, consultants, partners, shareholders, joint ventures, agents, successors, assigns or legal representatives ("Released Parties"), from all claims, rights, demands, liabilities and causes of action of any nature or description arising from the facts pleaded in the operative complaints in *Biscardi* and *Rieske* lawsuits, or as reasonably could have been pleaded, including any such claims that were litigated in the lawsuits against Company or could reasonably have been litigated in the lawsuits against Company. The claims released under this Paragraph ("Released Claims") shall include, but are not necessarily limited to, all claims under federal, state or local law for unpaid wages, unpaid overtime wages, failure to timely pay all earned wages, untimely payment of wages, failure to provide meal and rest periods and failure to pay all wages owed upon termination, including but not limited to, all claims asserted under the Fair Labor Standards Act, the New York Labor Law, and the state wage and hour laws applicable in the jurisdictions where the Plaintiffs and Employees worked for GEICO, existing as of the date Plaintiffs sign this Agreement, as well as any and all damages, back-pay, liquidated damages, restitution, disgorgement, civil penalties, statutory penalties, taxes, interest or attorneys' fees resulting therefrom. The release of the Released Claims under this Agreement shall take effect upon Company's funding of the full Settlement Amount to the Settlement Administrator.

4.2 Employees acknowledge that they may discover facts or law different from, or in addition to, the facts or law that they know or believe to be true with respect to the claims released in this Agreement and agree, nonetheless, that this Agreement and the release contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery of them.

4.3 Employees declare and represent that they intend this Agreement to be complete and not subject to any claim of mistake, and that the release herein expresses a full and complete release of the claims in Paragraph 4.1**,** and Employees intend the release herein to be final and complete. Employees execute this release with the full knowledge that this release covers all possible claims against Company as set forth in Paragraph 4.1 to the fullest extent permitted by law, except for those claims addressed in Paragraph 4.4.

4.4 This Release is not intended to bar any claims that, by law, may not be waived, such as claims for workers' compensation benefits, and unemployment insurance benefits. This Release does not prevent Employees from contacting, providing information to, or filing a charge with any federal, state or local government agency or commission, including but not limited to the Equal Employment Opportunity Commission ("EEOC"), the Securities and Exchange Commission ("SEC") or the National Labor Relations Board ("NLRB"). Employees are prevented, however, to the maximum extent permitted by law, from obtaining any monetary or other personal relief for any of the claims Employees have released in this Paragraph 4 and its subparts with regard to any charge or claim Employees may file or which may be filed or otherwise brought on Employees' behalf. Nothing in this Agreement is intended to or shall be interpreted: (i) to restrict or otherwise interfere with Employees' obligation to testify truthfully in any forum; or (ii) to restrict or otherwise interfere with Employees' right and/or obligation to contact, cooperate with, provide information to, or participate in any investigation conducted by, any government agency or commission (including but not limited to the EEOC, SEC or NLRB).

4.5 The individuals identified in Paragraph 1.4, on behalf of themselves, their estates, heirs, spouses, executors, administrators, attorneys, agents and assigns, fully and finally generally release and discharge the Company and its former and present parents, subsidiaries and affiliated corporations and entities, and all of its current and former officers, directors, members, managers, employees, consultants, partners, shareholders, joint ventures, agents, successors, assigns or legal representatives ("Released Parties"), from all claims, rights, demands, liabilities and causes of action of any nature or description including but not limited to the claims released in Paragraph 4.1, and including any and all damages, back-pay, liquidated damages, restitution, penalties, interest or attorneys' fees and costs.

5. No Admissions. By entering into this Agreement, Company makes no admission that it has engaged, or is now engaging, in any unlawful conduct. The Parties understand and acknowledge that this Agreement is not an admission of liability and shall not be used or construed as such in any legal or administrative proceeding.

6. Applicable Law. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of New York with respect to *Rieske* and Maryland with respect to *Biscardi*.

7. Successors and Assigns. This Agreement is binding on Employees' estates, heirs, family members, executors, agents and assigns.

8. Counterparts. This Agreement may be signed in counterparts and shall be treated as though signed as one document.

9. Entire Agreement; Modification. This Agreement is intended to be the entire agreement between the Parties. This Agreement may be amended only by a written instrument executed by all Parties. If either Court does not approve this Agreement in substantially the same form as executed, the Parties shall confer and attempt to reach an agreement on any modifications deemed necessary by the Court. If the Parties are unable to reach agreement or the Court does not approve the Agreement, the unresolved case or cases shall proceed with litigation with the Parties proposing a schedule for the remainder of the case.

10. Attorneys' Fees and Costs. Except as provided for herein, the Parties agree that each party shall pay for its own attorneys' fees, costs and expenses related to all claims and issues in this matter.

11. No Press Release. Plaintiffs' counsel shall not issue any press release or posting on electronic media regarding the case or settlement. This shall not prevent Plaintiffs' counsel from responding to inquiries from the press (if any).

THE PARTIES TO THIS AGREEMENT HAVE READ THE FOREGOING AGREEMENT AND FULLY UNDERSTAND EACH AND EVERY PROVISION CONTAINED HEREIN. WHEREFORE, THE PARTIES HAVE EXECUTED THIS AGREEMENT ON THE DATES SHOWN BELOW.

*[Signatures on next page]*

Dated: June 23rd, 2024 By: ______________________

Alexander Rieske

Dated: ______________, 2024 By: ______________________

Bridget Biscardi

Dated: ______________, 2024 By: ______________________

Craig Neidlinger

Dated: ______________, 2024 By: ______________________

Stephanie Koontz

Government Employees Insurance Company

Dated: ______________, 2024 By: ______________________

Dated: ________________, 2024 By: ________________________________
Alexander Rieske

Dated: June 21, 2024 By: ________________________________
Bridget Biscardi

Dated: ________________, 2024 By: ________________________________
Craig Neidlinger

Dated: ________________, 2024 By: ________________________________
Stephanie Koontz

Government Employees Insurance Company

Dated: ________________, 2024 By: ________________________________

Dated: ________________, 2024 By: ______________________________
Alexander Rieske

Dated: ________________, 2024 By: ______________________________
Bridget Biscardi

Dated: ________________, 2024 By: ______________________________
Craig Neidlinger

Dated: JUNE 21, 2024 By: STEPHANIE KOONTZ
Stephanie Koontz

Government Employees Insurance Company

Dated: 6/28/2024, 2024 By: DocuSigned by: Connie Lynch CFBE52B2D2A84CA...

Dated: ________________, 2024 By: ________________________________
Alexander Rieske

Dated: ________________, 2024 By: ________________________________
Bridget Biscardi

Dated: 06/20 ________________, 2024 By: Craig Neidlinger ________________________________
Craig Neidlinger

Dated: ________________, 2024 By: ________________________________
Stephanie Koontz

Government Employees Insurance Company

Dated: ________________, 2024 By: ________________________________